ROBERT BARCLAY v. THE STATE.

No. 1123. Decided April 19, 1911.

Rehearing Denied May 17, 1911.

**1.—Seduction—Indictment—Motion in Arrest of Judgment.**

Where, upon trial of seduction, the indictment properly charged the elements of the offense, there was no error in overruling a motion in arrest of judgment.

**2.—Same—Sufficiency of the Evidence.**

Where, upon trial of seduction, the evidence showed that the prosecutrix and the defendant were engaged to be married for some time, and that the engagement was never broken; that the correspondence between the defendant and prosecutrix showed that it was continued for about two years, and was

couched in the most endearing terms on the part of the defendant; that the prosecutrix only yielded because they were engaged to be married, and upon defendant's promise to marry her, and that a child was born in due time of gestation, the offense was made out and the conviction sustained.

Appeal from the District Court of Llano. Tried below before the Hon. Clarence Martin.

Appeal from a conviction of seduction; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Flack & Dalrymple* and *Joe P. Flack,* for appellant.—On the question of the insufficiency of the evidence: State v. Reeves, 97 Mo., 668; Putnam v. State, 29 Texas Crim. App., 454; Spenrath v. State, 48 S. W. Rep., 192; McCullar v. State, 36 Texas Crim. Rep., 213; Snodgrass v. State, id., 207.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, Judge.—Appellant was charged with the offense of seduction. Upon a trial he was convicted and sentenced to two years in the penitentiary.

In this case there is a motion in arrest of judgment on the ground of the insufficiency of the indictment. The indictment properly charges the elements of the offense and is valid.

In his motion for a new trial there are but two grounds. First, objection to the admissibility of certain testimony; second, that the evidence is wholly insufficient to support the verdict. Appellant in his brief admits that the first ground is not well taken under the qualification of the bill of exceptions, but earnestly insists that evidence does not establish the elements of seduction, and quotes the case of the State v. Reeves, 97 Mo., 668, as saying: "No one can, with any degree of plausibility, contend that a virtuous female could be seduced without any of those arts, wiles and blandishments so necessary to win the hearts of the weaker sex. To say that such a one was seduced by simply a blunt offer of wedlock in future in exchange for sexual favors in presenti, is an announcement that smacks too much of bargain and barter, and not enough of betrayal. 'Tis hire or salary, not seduction." To this definition we concede in a proper case, and if that is all this record discloses this case should be reversed. If in this case there was only a "blunt offer in wedlock in futuro for favors at the present time, and no betrayal," no case of seduction is presented.

The prosecuting witness testified they were engaged to be married in 1907, and that the engagement was never broken. The defendant admits that they became engaged to be married in 1907, but he says the engagement was broken on January 1, 1909, and that thereafter he did not go with her but once, and that he did not write her after that date. Several witnesses testify to seeing defendant with her at

different times after January 1, 1909, and the correspondence intro-
duced in evidence shows that defendant continued to write to her until
November 2, 1909.   That he had written in February, March, May,
August, September and November, 1909, the last communication being
written just eight days before the birth of the child in November, 1909.
So we take it the jury would be authorized to find that an engagement
existed that was never broken until after the birth of the child.

The prosecuting witness testified that the first act of intercourse
took place late in the year 1908, she saying: "He had importuned and
asked me before that time to have carnal intercourse with him, but I
did not yield.   The reason I yielded to him on this occasion was be-
cause we were engaged to be married, and I loved him and thought he
really meant it—meant to marry me.   He had carnal intercourse with
me several times after that.   He had carnal intercourse with me several
times in February, 1909.   He continued to come to see me from the
time he first met me.   He never quit coming to see me until after the
child was born.   I sent for him and he came to see me the next day
after the child was born.   He said he knew the child was his, and he
would marry me as soon as I got up; he came again on Sunday and
talked with me, and said he intended to, and was going to marry me.
He came again on Monday or Tuesday, and said he would go to Llano
and get his license, and would marry me.   My brother was present
during a part of these conversations.   Letters from defendant to the
witness were introduced, containing endearing terms, and containing
such excerpts:

> "You may meet fairer faces,
>   Some may tell you I am not true;
>   But believe them not, my darling,
>   For I love none else but you."

Again:

> "Doubt the stars are fire, ·
>   Doubt the sun doth move;
>   Doubt the truth to be a liar,
>   But never doubt I love you."

We could continue these excerpts from the letters, but deem it un-
necessary, as they sufficiently show he was endeavoring to win her love.

Her brother testifies that he was present at the three times the de-
fendant visited her after the birth of the child, and says that defend-
ant admitted the child was his, and that he would marry her, and
promised to go and get the license, but instead of doing so left the
country the night of the last visit he made to the prosecuting witness.

Defendant denies ever having sexual intercourse with the witness,
and denies in emphatic terms agreeing to marry her when he visited
her after the birth of the child, and says that prosecuting witness ad-

mitted to him another was the father of the child. His mother and sister say they visited prosecuting witness after the birth of the child and while she was still in bed, and that she told them defendant was not the father of the child, but another was its father. A number of witnesses were introduced on matters tending to corroborate and to disprove the statements of the prosecuting witness. She was shown to have a good reputation for virtue prior to the birth of the child.

All these were matters for the jury under a proper charge, which is not even criticised. We have stated rather fully the evidence, because of the contention of able counsel for defendant that, even though the jury found he did have sexual intercourse with the prosecuting witness, that the evidence did not authorize them to convict, because the evidence did not show the offense of seduction as legally and properly defined. In this we can not agree with appellant when we read the correspondence and testimony.

Judgment affirmed.

*Affirmed.*

[Rehearing denied May 17, 1911.—Reporter.]